UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL ASHLEY,

          Plaintiff,          Civil Action No. 19-10484
v.                                      Honorable Mark A. Goldsmith
                                            Magistrate Judge David R. Grand

MARY BOAYUE, *et al.*,

          Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART DEFENDANTS BREWER AND SPAULDING'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [35], AND TO DENY DEFENDANTS
BRAZEE AND ARENDS'S MOTION FOR PARTIAL SUMMARY JUDGMENT [39]**

Plaintiff Carl Ashley ("Ashley"), who is incarcerated at Muskegon Correctional Facility ("MCF"), appears *pro se* in this matter, which he commenced on February 15, 2019. In his complaint, Ashley alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 against numerous defendants whom he alleges were deliberately indifferent to his serious medical needs. (ECF No. 1.) On November 5, 2019, Michigan Department of Corrections ("MDOC") Defendants Shawn Brewer and Donald Spaulding[1] filed a Motion for Partial Summary Judgment alleging that Ashley failed to exhaust his administrative remedies against them. (ECF No. 35.) On November 19, 2019, MDOC Defendants Brazee and Arends[2] filed a Motion for Partial Summary Judgment alleging that Ashley failed to exhaust his administrative remedies against

---

[1] The motion indicates that it was also filed on behalf of MDOC Defendants Sirena Landfair and Kimberly Schaub, but those particular Defendants do not actually seek any relief with respect to Ashley's claims against them.

[2] This motion indicates that it was also filed on behalf of MDOC Defendant Lana McCarthy, but Defendant McCarthy does not actually seek any relief with respect to Ashley's claim against her.

them. (ECF No. 39.) Ashley responded to both motions, (ECF Nos. 40, 41), and Defendants filed a single reply brief addressing Ashley's responses. (ECF No. 43.)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion for partial summary judgment filed by Defendants Brazee and Arends **(ECF No. 39)** be **DENIED**, and that the motion for partial summary judgment filed by Defendants Brewer and Spaulding **(ECF No. 35)** be **GRANTED AS TO BREWER AND DENIED AS TO SPAULDING**.

## II. REPORT

### a. Background

Ashley has bladder cancer and underwent surgery on January 27, 2016, for the removal of his bladder and prostate. (ECF No. 6, Page.ID 187.) The University of Michigan discharged Ashley after his surgery with medical supplies to care for his urostomy with ileal conduit. (*Id.*). In addition, a wound care nurse suggested that he wear belt-loop pants rather than MDOC standard-issue elastic waist band pants to allow him to properly situate the urine pouch inside his pants to prevent blockage, which could cause infection. (*Id.*). Ashley's claims arise out of MCF's care of his wound and issuance of proper supplies.

### b. Legal Framework

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the

truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **c.    Analysis**

In their motions, Defendants argue that summary judgment is warranted on Ashley's claims against Brewer, Spaulding, Arends and Brazee because Ashley failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (ECF Nos. 35, 39.) Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it

protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

MDOC Policy Directive 03.02.130 governs "Prisoner/Parolee Grievances," and specifies the procedural and substantive requirements an inmate must satisfy to properly exhaust a grievance. (ECF No. 35-2.) The Policy Directive provides, in pertinent part:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
>
> \* \* \*
>
> P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue appropriate staff.
>
> \* \* \*
>
> R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; . . . The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

(*Id.*)

4

The Policy Directive goes on to describe the three-step grievance and appeals process, the details of which are not at issue here. However, relevant to the motions filed by Spaulding, Brazee, and Arends, Paragraph G of the Policy Directive provides that an inmate's grievance may be rejected for a number of reasons, including if it "is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." (*Id.*, PageID.349.)

   *i.    Defendants Spaulding, Brazee, and Arends*

Defendants Spaulding, Brazee, and Arends argue that Ashley failed to exhaust his administrative remedies against him because grievance MCF-17-11-0871-28A ("Grievance 871"), which alleged facts against those three Defendants, was rejected as being a duplicate of #159 and #190[3] and that rejection was upheld at Steps II and III of the MDOC's grievance process. (ECF No. 35, PageID.342, No. 39, PageID.444-45.) This argument lacks merit.

First, this Court rejects the implication that "whenever a grievance is rejected as duplicative, it is not properly exhausted as a matter of law." *See Johannes v. Washington*, Case No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich., March 31, 2006). "If this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative. Thus, to carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the [] allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper." *See id*. The Defendants cannot meet that standard here. Indeed, the salient Grievances are not "duplicates" of one another.

---

[3] "159" refers to grievance MCF-17-02-0159-03H, while "190" refers to grievance MCF-03-0190-17Z. The Court will refer to these two grievances as "Grievance 159" and "Grievance 190," respectively.

    *a. Grievance 871*

In Grievance 871, Ashley stated:

> On November 6, 2017, I was called to the Quartermaster Department by *Quartermaster Arends* to measure me for extra length pants with belt loops that had been ordered by MCF Health Services (Dr. Decker). This callout/measurement was in response to an October 27, 2017, memo from Humanity for Prisoners that was sent to *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, and Warehouse Supervisor Schaub.* The memo was authored by Dr. Robert Bulten, MD, and Dr. Gilbert Padula, MD. These Doctors stated that the failure/refusal/delay of *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, and Warehouse Supervisor Schaub* to honor a doctor's orders regarding providing proper fitting belt loop pants has caused scarring to my ureters, and has compromised my kidney function. In the past ten months, because of the failure/refusal/delay of *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, and Warehouse Supervisor Schaub*, to provide proper fitting belt loop pants, I have been treated for nine urinary tract infections in the last ten months. Now, at the direction of, and with approval from *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, and Warehouse Supervisor Schaub, Quartermaster Arends* is attempting again to cobble together some extra length belt loop pants, rather than ordering proper fitting pants.
>
> *Quartermaster Arends* acknowledged that their vendor does not make extra length belt loop pants. She acknowledged that she has no Tall or X-Tall items in her inventory. She has now been authorized by *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, and Warehouse Supervisor Schaub* to order 12 yards of material, and to allow a prisoner worker to cobble together extra length belt loop pants. This "cobbling" has been attempted in the past, has been unsuccessful, and has caused damage to my urinary system.
>
> Policy states: "If a prisoner requests an item in an unusual size (e.g., extremely large; extremely small) and the item cannot be provided from [current vendor] within 30 calendar days from the request, the item shall be immediately ordered from another source." (PD 04.07.110, "State Issued Items and Call/Room Furnishings," page 1, sec C). *Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, Warehouse Supervisor Schaub, and Quartermaster Arends* are all aware of the damage that has already been caused to my urinary system by their failure/refusal/delay to order proper fitting pants, and yet, they still refuse to follow policy and "immediately order [] from another source."
>
> Suggested Resolution: Order pants from a clothing manufacturer in size

6

> 45" waist, 40" inseam, for proper fit.

(ECF No. 35-3, PageID.381-82.)

At Step I, the MDOC rejected this grievance as being a "duplicate" of Grievance 159 and Grievance 190. (ECF No. 35-3, PageID.383.) Likewise, the MDOC rejected Grievance 871 at Step II as violating PD 03.02.130, which states in relevant part, "a grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, raises issues that are *duplicative* of those raised in another grievance filed by the grievant or is filed in an untimely manner." (ECF No. 35-3, PageID.380 (emphasis added)). MDOC upheld the rejection at Step III. (ECF No. 35-3, PageID.378.)

> b. *Grievance 190*

In Grievance 190, Ashley stated:

> On 2/28/2017, I was seen by *Kim Shaub* [sic] (Warehouse Supervisor) regarding a Special Accommodation Notice (SAN) that was issued by a Qualified Health Professional for Quartermaster items. *Ms. Shaub* [sic] stated that she did not think the SAN should've been issued because the MDOC does not carry the items identified in the SAN. (Note: The MDOC does not carry floppy wide-brimmed hats [for sun protection], canes, crutches, wheelchairs, or specialty shoes. However, when these items are ordered by Health Services, the items are procured.). She stated that she was going to contact Health Services and the Warden to have the SAN rescinded. Policy states that "Prisoners . . . shall be provided with assistive devices and other services necessary for medical needs." (PD 04.06.160, "Medical Details and Special Accommodation Notices," page 1). All medical matters "involving medical judgment are the sole province of the responsible physician." (PD 03.04.100, "Health Services", page 2, para L.). A Qualified Medical Professional, after exercising his medical judgment, determined that the Special Accommodation Notice was medically necessary. *Ms. Shaub* [sic] does not have the medical training or authority to second guess the medical judgment of a Qualified Medical Professional. Ms. Shaub's [sic] failure/refusal to comply with the SAN will result in physical injury, and possibly permanent damage, to my body.

(ECF No. 35-3, PageID.387 (emphasis added)).

Defendant Spaulding denied this grievance at Step I, stating:

7

> In investigating this situation, it was found that WHS *Schaub* provided 2 pair of pants that were altered to the sizes that Mr. Ashley requested. Mr. Ashley did not like the fact that the pants were altered and did not meet his definition of wearing his pants at his waist. His definition of his waist is just below the nipple line which by industry standards is not your waist. Thus, the pants given to him appear to be short. At this time a new set of pants will be made to meet his criteria. At this time, we are meeting the requirements of serviceable clothing for Mr. Ashley, therefore this grievance is denied.

(ECF No. 35-3, PageID.388 (emphasis added)).

Ashley appealed. (ECF No. 35-3, PageID.385.) Warden Burt denied the appeal, stating: "Based on the record and investigation provided in this matter, the pants provided by the quartermaster are sufficient to meet the requirements of the medical detail. I find no violation of policy or procedure. For the reasons noted, your Step II appeal is denied." (ECF No. 35-3, PageID.386.) Ashley appealed again at Step III, but that appeal was also denied. (ECF No. 35-3, PageID.384, 89.)

      *c. Grievance 159*

In Grievance 159, Ashley grieved an incident that occurred on February 15, 2017, regarding Quartermaster Wilson. (ECF No. 35-3, PageID.395.) Ashley stated:

> On February 15, 2017, I presented this SAN to the Quartermaster (Mr. Wilson), along with my pant size (40 waist; 40 inseam). . . . Mr. Wilson has not ordered these pants. These pants are a medical necessity and has been ordered by a Medical Professional. I am requested [sic] that the pants be ordered pursuant to policy.

(ECF No. 35-3, PageID.395.)

Defendant Schaub returned the grievance to Ashley as resolved, stating: "Altered pants accommodate (SAN) pants are 40-41 with belt loops." (*See id*.) Ashley appealed to Step II. Warden Burt denied the grievance at Step II stating: "the pants provided by the quartermaster are sufficient to meet the requirements of the medical detail." (ECF No. 35-3, PageID.394.) Ashley's

Step III appeal was also denied. (ECF No. 35-3, PageID.392.)

### d. *The Grievances Are Not Duplicates and were Improperly Rejected*

A comparison of Grievance 871 and Grievances 190 and 159 illustrates many differences between them that prevent the Court from finding that they were "duplicates" of one another (or, to quote the Policy Directive, that they raised "issues that [were] duplicative of those raised in another grievance.").

Grievance 190 relates to an incident that occurred in late February 2017. In that Grievance, Ashley grieved one person – Kim Schaub – because she not only refused to honor Ashley's Special Accommodation Notice for belt loop pants (the "SAN"), but attempted to have it rescinded. Ashley filed Grievance 871 about eight months later against Warden Burt, Acting Deputy Warden Brazee, Business Manager Spaulding, Warehouse Supervisor Schaub and Quartermaster Arends related to their response to the instructions contained in an October 27, 2017 memo from doctors who had written on Ashley's behalf. Rather than flatly rejecting Ashley's needs for belt loop pants, the targets of this Grievance essentially attempted a "work around" that Ashley thought would not "work."

Like with Grievance 190, Grievance 159 is different than grievance 871. Grievance 159 is regarding Quartermaster Wilson and an incident that occurred on February 15, 2017, whereas Grievance 871 is regarding Spaulding, Brazee, and Arends, and an incident that occurred on November 6, 2017. (ECF No. 35-3, PageID.395.)

Although the three Grievances relate to the same general subject matter – special pants Ashley needed to accommodate a medical issue – because they concern different time periods, different individuals, different instructions, and different conduct, the Grievances were not "duplicates" of one another. Thus, the MDOC improperly rejected Grievance 871 as being a

"duplicate" of the Grievance 159 and 190. *See Johannes,* 2016 WL 1253266, at *6. Defendants cannot now use this improper rejection to claim that Ashley failed to exhaust his administrative remedies against them. *See id*.

Defendants' contrary argument could lead to perverse outcomes. Under Defendants' argument, after an inmate grieved an initial constitutional violation by one prison official, subsequent officials could continue to engage in identical unconstitutional conduct with impunity because the prisoner's subsequent grievances could be rejected as "duplicative" of the initial one, and the prisoner would be unable to exhaust his claims against the subsequent tortfeasors. Such an application of the PLRA's exhaustion requirements is nonsensical. Moreover, because Defendants' application of the Policy Directive would not permit the inmate to pursue his grievance against the additional tortfeasors, the exhaustion process would be "unavailable" to him vis-à-vis those particular tortfeasors, and thus would not be a basis for disallowing his claim from proceeding in court. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies, and that inmates "must exhaust available remedies, but need not exhaust unavailable ones.").

Thus, Defendants Spaulding, Brazee, and Arends are not entitled to summary judgment.

*ii.    Defendant Brewer*

Defendant Brewer makes a different exhaustion argument than the other Defendants; he asserts that Ashley "did not name [him] in any of his initial grievances." (ECF No. 35, PageID.343.) Ashley counters that he named Brewer in grievance JCF-16-05-0809-12I ("Grievance 809"). (ECF No. 40, PageID.450.) Careful review of the Policy Directive's requirements and Grievance 809's contents shows that Brewer's argument is meritorious.

As noted above, Paragraph R of the MDOC's Policy Directive provides that an inmate

seeking to file a grievance must identify, among other details, the "names of all those involved **in the issue being grieved** . . ." (ECF No. 35-2, PageID.351) (emphasis added). The content of Ashley's Grievance 809 makes clear that the only issue he grieved was **PA Boayue's** alleged violation of MDOC policy due to "[h]er refusal to do an examination and explore other options" for obtaining belt loop pants for Ashley:

> Prior to and after I had a Cystectomy/Urostomy, the Wound/Ostomy Services at the University of Michigan said State-Issued elastic waistband pants would cause bleeding and damage to the Stoma, and would reduce wear time of Skin Barriers. They recommended/ordered the issuance of belt-loop pants so the waist-line could be adjusted. Based on this recommendation from Specialists, and the medical judgment of PA Boayue, a Special Accommodation Notice was issued for "extra length pants with belt loops and belt." Those reasons have not changed. In the past eight weeks there has been bleeding and irritation of the Stoma, and small holes ripped into the Urostomy bags by the roughness of the elastic waistband pants. On 4/27/2016, PA Boayue rescinded the SAN because she was told that belt-loop pants present a threat to institutional order and security. There are hundreds at JCF, and thousands across the State, that have belt-loop pants. They certainly are not a threat. "A currently valid . . . Special Accommodation Notice shall not be cancelled without . . . examination of the prisoner." ("Medical Details and Special Accommodation Notices," PD 04.06.160, Sec. K.). The PA did no examination. If **the Warden** believes that institutional safety would be compromised by medically ordered belt-loop pants, **then the PA** "shall seek alternative options to meet the medical need which would not compromise institutional safety or security." PD 04.06.160, Sec.L.). **The PA has violated MDOC Policy. Her refusal** to do an examination and explore other options **is an act of deliberate indifference to my serious medical needs.**

(ECF No. 35-3, PageID.426.) (emphasis added).

That Ashley's Step I Grievance was aimed solely at Boayue is further confirmed by the fact that in response to the Step I grievance form's question, "What attempt did you make to resolve this issue prior to writing this grievance?," Ashley wrote, "Attempted to speak to PA Boayue when she handed me the new Special Accommodation Notice. Issue was not resolved." (*Id.*)

Contrary to Ashley's argument, the mere fact that his Step I Grievance referenced "the

11

Warden" does not change the analysis. Even assuming that reference pertained to Brewer, the Grievance simply did not grieve any decision or action of "the Warden." In fact, the gist of Ashley's grievance was that even *if* the Warden had safety concerns, that would merely obligate *PA Boayue* to "explore other options," and that Boayue failed to do so. In short, Ashley's Grievance 809 unambiguously identified "the issue being grieved" as *PA Boayue's* "refusal to do an examination and explore other options."[4] Accordingly, Grievance 809 could not aid Ashley in exhausting any claim he may have had against Brewer.

Ashley attempts to overcome this analysis by citing *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), for its holding that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *See id.* at 325. But *Reed-Bey* is inapposite here because the MDOC did not "decline to enforce [its] own procedural rules." Rather, the MDOC allowed Ashley's grievance against PA Boayue to proceed through all three steps of its grievance process on the merits, with Ashley indicating, every step of the way, that the sole issue he was grieving was PA Boayue's conduct. In short, while the MDOC's decision to address Ashley's grievance against PA Boayue on the merits might permit him to overcome some other exhaustion shortcoming with respect to his claim against PA Boayue, it cannot be a basis for finding that Ashley exhausted a claim he did not make in the first place.

---

[4] It is also worth noting that Ashley's Step II and Step III appeals were similarly focused exclusively on Boayue's alleged conduct. For his Step II appeal, Ashley wrote, "**The PA** has allowed **her medical judgment to be undermined** by non-medical staff, and **this** has left me without any viable means to protect the stoma area from trauma or damage." (ECF No. 35-3, PageID.424.) (emphasis added). At Step III, Ashley again explained that his complaint was that PA Boayue "rescinded the SAN without any exploration of possible alternatives." (*Id.*, PageID.424.)

12

For all of the above reasons, Ashley did not properly exhaust a claim against Defendant Brewer, and Brewer is entitled to summary judgment.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the motion for partial summary judgment filed by Defendants Brazee and Arends **(ECF No. 39)** be **DENIED**, and that the motion for partial summary judgment filed by Defendants Brewer and Spaulding **(ECF No. 35)** be **GRANTED AS TO BREWER AND DENIED AS TO SPAULDING**.

Dated: February 18, 2020  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2020.

            s/Eddrey O. Butts
            EDDREY O. BUTTS
            Case Manager